UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MAXIMILIANO SILEONI, | Case No. 1:21-cv-00010-BLW |
| Plaintiff, | **SUCCESSIVE REVIEW ORDER** |
| v. | |
| INMATES SOLO, JUSTICE, JORDAN, CORNEJO, "BEAR," WILLARD, WILSON, PETERSON, NEGRO, PIXLER, ESPISITO, GARCIA, GONZALEZ, SANDERS, STUEE, CURTIS, CERVANTE, MONTGOMERY, BETKET, STEVENSON, PENNINGTON, SHUFF NICOLA, AND HOCHDRAIN; | |
| Defendants. | |

Plaintiff Maximiliano Sileoni has filed his Amended Complaint in this action. Dkt.11. The claims in this action were severed from Case No. 1:20-cv-00508-BLW for the reason that the original Complaint containing multiple unrelated claims violating Federal Rule of Civil Procedure 20.

Plaintiff was provided with the standard of law for asserting a claim of conspiracy among state actors and non-state actors and a form to enhance his ability to set forth the facts meeting the elements of such a claim. Dkts. 10, 10-1. Accordingly, the Court reviews the Amended Complaint according to applicable screening standards.

**SUCCESSIVE REVIEW ORDER - 1**

## STANDARDS OF LAW

Under modern pleading standards, Federal Rule of Civil Procedure 8 requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal/Twombly* "facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Twombly*, 550 U.S. at 556.

In addition, the Prison Litigation Reform Act (PLRA)[1] requires the Court to screen all pro se prisoner and pauper complaints to determine whether they have stated a claim upon which relief can be granted before such complaints are served on the defendants. 28 U.S.C. §§ 1915 & 1915A. The Court must dismiss any claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

The Court liberally construes a plaintiff's pleadings to determine whether the case should be dismissed for lack of a cognizable legal theory or a failure to plead sufficient facts to support a cognizable legal theory, under the *Iqbal/Twombly* standard. The critical

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

**SUCCESSIVE REVIEW ORDER - 2**

inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989). Rule 12(b)(6) authority to dismiss claims as explained in *Jackson* was expanded by the PLRA, giving courts power to dismiss deficient claims sua sponte, either before or after opportunity to amend as explained in *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Under the PLRA, the Court retains screening authority to dismiss claims "at any time" during the litigation, regardless of fee payment. 28 U.S.C. § 1915(e)(2)(B).

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). For Plaintiff's purposes, 42 U.S.C. § 1983 is an implementing statute that makes it possible to bring a cause of action under the Amendments of the United States Constitution.

The elements of a claim of conspiracy to deprive another of his civil rights are as follows: "(1) the existence of an express or implied agreement among the [defendants] to deprive [the plaintiff] of his constitutional rights; and (2) an actual deprivation of those rights resulting from that agreement." *Ting v. U.S.*, 927 F.2d 1504, 1512 (9th Cir. 1991) (*Bivens* action relying on § 1983 case, *Dooley v. Reiss*, 736 F.2d 1392, 1394-95 (9th Cir. 1984)).

**SUCCESSIVE REVIEW ORDER - 3**

To allege a conspiracy between state actors and a private party under § 1983, the plaintiff must bring forward plausible factual allegations showing "an agreement or 'meeting of the minds' to violate constitutional rights." *See Fonda v. Gray*, 707 F.2d 435, 438 (1983) (citation omitted). Each conspirator 'need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" *Id*.

## ALLEGATIONS

Plaintiff's Amended Complaint contained the following allegations, among others. The Court has made an effort to preserve Plaintiff's particular expressions of his claims to demonstrate the implausible and often salacious nature of his allegations.

Plaintiff asserts that Defendants, who are various inmates living in the protective custody unit of Idaho State Correctional Institution (ISCI), verbally harassed him while he was living in that unit because they thought he was a "lame sexual predator" and an "informant." Dkt. 12, p. 3. In particular, Defendant Inmate Solo claimed to be the Northsider or Sureno gang member unit "shot caller," who told everyone on the unit where they could live, with whom, what to do, when to pay rent, and when they had to leave the unit by going to suicide watch or the "hole" (disciplinary segregation). *Id*. Solo and other Defendants also ran an illicit commissary store in the unit. Plaintiff asserts that Soto had "the help of multiple C/O," and that Soto gained their trust because he was the unit janitor told them "how much of a sexual predator [Plaintiff] was." *Id*.

Plaintiff also asserts Soto told female staff to "write [Plaintiff] DOR[s]" and not speak to him because he was a sexual predator, but, at the same time, Soto "himself was sexualy with most nurse and C/O at 1-D-Block ISCC do that he was a trusted janitor and can be alone with them" (*Id.* (verbatim).) Plaintiff says that "Rummors were that [Soto] had sex with Nurse Taylor Kristen and Dallas Leindsey as well as C/O Quoter after Inmate Zalazar rape C/O Quoter." (*Id.* (verbatim).) Plaintiff alleges that his friend Jody Carr told him that "Defendant Solo p[illegible] that Nurse Taylor and is fucking her and are together on the street. Defendant Solo "managed to pit unit staff and this nurse against [Plaintiff]. C/O Meza wrote [Plaintiff] a D-O-R after he found a letter from Defendant Solo to Nurse Dallas, just to get back at me. Defendant did all of this with the help of C/O, unit sgt. to manipulate staff and inmate" *Id.* (verbatim).

Plaintiff asserts that another defendant, Inmate Justice, said he, too, "was sexualy active with Nurse Taylor Kristen and Dallas Leindsey." *Id.*, p. 4. Justice asked C/O Dodge to open Plaintiff's door so that Justice could go inside and beat him up due to being a sexual predator. Justice asked Nurse Kristen if Plaintiff asked her for sex. *Id.*

Plaintiff asserts that another defendant, Inmate Jordan, "was being sexualy active with staff" and consuming "meth and alcohol" in the unit. *Id.*, p. 5. Jordan was the unit barber and would verbally harass Plaintiff when Jordan was let out of his cell to cut other inmates' hair. When Jordan was living with Inmate Solo, Jordan told Plaintiff that "he was piss at his cell mate do that he cover his door window and leave his cell door open just an inch for the reason that some female staff likes to walk in and have sex with Solo.

**SUCCESSIVE REVIEW ORDER - 5**

I said he has it like that and he told me go open the door he is fucking her right now." *Id*. (verbatim). Plaintiff says that, from that day—after he told a correctional officer what Jordan said—"everything when downhill" *Id*. (verbatim).

Defendant Inmate Cornejo allegedly ran an illicit commissary store in the unit and told Plaintiff he could not purchase items there. Cornejo called him a "dog ship piece of shit sex offender" and bullied him with the help of other offenders in the unit. *Id*., p. 6 (verbatim).

Defendant Inmate "Bear" "screamed" at Plaintiff "about how much of a sexual predator he was," scaring a female staff member who was giving Plaintiff a COVID-19 nose swab test. *Id*., p. 7. Bear verbally harassed him, calling him a "Rat Boy Sex Offender PREA Caller." *Id*.

Defendant Inmate Willard would pretend that commissary items were missing from his order and report that to the correctional officers, who would give him reimbursement for the items. Willard was the "White Boys Shot Caller" in the unit and made Inmate Curtis kick Plaintiff out of his cell on 1-D-38-A. *Id*., p. 8.

Defendant Inmate Wilson was Willard's cell mate and screamed at Plaintiff every time Plaintiff was out of his cell. Wilson allegedly made inmate Payne move in with Plaintiff so that Payne could "call rape on [Plaintiff] to get at [him] on behalf of all" of the Defendants. *Id*., p. 9.

Willard told Defendant Inmate Peterson to beat Plaintiff up. Plaintiff alleges that Peterson would "tag along with the verbal harassment and as well try to get me beat up

**SUCCESSIVE REVIEW ORDER - 6**

by his transexual girlfriend defendant Gonzalez. Peterson would make this transsexual

open his utility port and make him get oral sex through the utility port and he beat him up

for talking to other inmate" *Id*., p. 10 (verbatim). Peterson put Plaintiff down by calling

him "neger rat" *Id*. (verbatim).

Defendant Inmate Stuee was a suicide watch companion. Plaintiff alleges:

> [Stuee] made some comment to medical record's clerk Tasha
> a redhead about I have to look over this sex offender. Tasha
> was standing against the door in the ISO that I was in facing
> Defendant Stuee. Tasha push her pan's down enofe where I
> and Stuee got to see her shaven dark reddish vagina and she
> started to rub her clitoris and when she saw me look at her she
> stop and walk off by saying will have to wait til he go to
> sleep. I got mad and told the security C/O Jason Thues about
> it, later I was release back to PC. We somewhat talk and he
> told me that he rape the commissary lady and Shannon Olson
> programming worker by touch pussy. After Stuee hear from
> everyone that I was a rate lame piece of shit he came along
> ask me for a bunch of stuff and said to pay back and never did
> as well defendant tag along on the verbal harassment as well
> defendant Stuee when he came to my door in 1-D-8-A he told
> me of his current rape crime with the commissary lady he
> gave me details of the sean and as well add that that was
> nothing that while he was at ISCC and he was the companion
> that multiple nurses and clinician would provide sexual favor'
> such as exposing the Breath or vaginal at all the inmate
> workers at medical as well as companion and that they would
> at time bring meth and let them touch them that suppostably
> the security c/o would not say anything to anyone as long it
> was not on the cameras recorded security camera's and when
> he was not at medical working companion he was working at
> C-block as the foyer janitor he mention that over their it was
> free titt's pussy its grab with all the girl's that would come
> along as well mention that grievance coordinator was having
> sex with inmate in her office."

*Id*., p. 17 (verbatim).

In addition, Defendant Inmate Stevenson allegedly did the following:

> This defendant was in my walk and came into my cell wen I was in the shower and stold coffee. I push the call light that day to make a report of it. Later defendant stold a bottel of lotion from me and move to another walk and starded to verbally harass me. This defendant was selling pill in the unit and buying pills in the unit as well he would make some cinnamon bread with sugar and sell it in the unit and people come to fine out that he put poop on a few of them and sold them to a few guys that were messing with him. Defendant Dave Betket beat defendant Stevenson after he stold from him when they were cell mate.

Dkt. 12, p. 22 (verbatim).

Plaintiff's allegations against the remaining defendant inmates discuss verbal harassment and detail their acts that are similar to, but not as colorful as, those set forth herein above. *See* Dkt. 12. For reasons of judicial economy, the Court does not discuss the additional allegations.

## DISCUSSION

The Court provided Plaintiff with the standards of law for amendment and a very clear amendment form that provides specific areas for the elements of a conspiracy cause of action. The Court has reviewed the allegations in the Amended Complaint. Plaintiff has failed to state plausible allegations that (1) state actors entered into a conspiracy with the defendant inmates; or that (2) the conspiracy's object was to deprive Plaintiff of specific constitutional rights. Rather, the allegations are in the nature of state tort actions against non-state actors.

Under governing pleading standards, a complaint "is frivolous where it lacks an arguable basis either in law or fact. [The] term 'frivolous,' when applied to the complaint,

embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). When determining whether a complaint is frivolous, the Court need not accept the factual allegations as true, but must "pierce the veil of the complaint," to determine if the allegations are "fanciful," "fantastic," or "delusional." *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992) (quoting Neitzke, 490 U.S. at 327–28).

Under the in forma pauperis statute, 28 U.S.C. § 1915, the Court is "not bound ... to accept without question the truth of plaintiff's allegations" simply because they "cannot be rebutted by judicially noticeable facts." *Denton*, 504 U.S. at 33. "[A] finding of factual frivolousness is appropriate when the facts alleged arise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id*.

In addition to the lack of factual allegations to support the elements of a federal claim, the amended complaint contains many allegations in the nature of his allegations in Case No. 1:20-cv-00508-BLW ("Case 508"), which the Court dismissed as fanciful and frivolous. It is simply not plausible that multiple medical and other professional female staff members are engaging in sexual relations with multiple inmates, putting in jeopardy the staff members' jobs, state licenses, personal assets, and their time and monetary investments in their education. The extent and nature of the allegations make them simply implausible. In fact, Plaintiff has admitted in Case 508 that he has a "mental illness of being sexually attracted to older woman's, that cause me to exhibit myself to

them because in my mind I believe that they would get with me, in a sexual encounter and give me love and show me compassion and care for my body like a mother would to her newborn child." Dkt. 3, p. 21 (verbatim).

In Case 508, the Court concluded:

> Plaintiff has included no less than 32 separate instances of alleged sexual abuse against at least 32 prison officials and medical personnel (some instances reference more than one state actor). Most of the claims have a similar theme—that the providers are inviting him to participate in sexual activity by words or body language "hints." Plaintiff has alleged so many similar claims against almost every medical provider that has treated him, and, in particular, against female medical providers, that the claims are simply implausible. It is unclear whether these allegations are a manifestation of Plaintiff's diagnosis of paraphilia of a sexual nature or, as Plaintiff suggests, exhibitionist disorder, or whether he is simply attempting to harass medical and prison personnel by making shocking and malicious claims against them.

Dkt. 15, pp. 10-11 in Case 508.

This action will be dismissed for failure to state a claim upon which relief can be granted. Plaintiff has already been granted one opportunity to amend, and further amendment would be futile.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Amended Complaint (Dkt. 12), and this entire action, are DISMISSED for failure to state a claim upon which relief can be granted. This case is also ordered closed.

2. Plaintiff's Motion Requesting Subpoena (Dkt. 11) is DENIED.

**SUCCESSIVE REVIEW ORDER - 10**

DATED: April 20, 2021

B. Lynn Winmill
U.S. District Court Judge

**SUCCESSIVE REVIEW ORDER - 11**